# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOCELYN DESVARIEUX and FRANTZ JEAN, | : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | |
| ALLSTATE PROPERTY & CASUALTY INSURANCE CO., | : : | No. 17-2564 |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                                                                     **April 26, 2018**
**U.S. Magistrate Judge**

      Plaintiffs Jocelyn Desvarieux and Frantz Jean claim that Defendant Allstate Property & Casualty Insurance Company breached their home insurance policy ("the Policy") by denying coverage for damage caused after the front wall of Plaintiffs' home collapsed. See Am. Compl. (doc. 5). Allstate seeks summary judgment, asserting it properly denied coverage because the collapse was not covered by the Policy. See S.J. Mot. (doc. 19). Because there are genuine issues of material fact as to whether the Policy covered the collapse, I deny Allstate's motion.

### I.     Legal Standard

      Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material facts exists when "factual issues . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). I must view the facts and draw inferences in the light most favorable to the nonmoving party. See Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013). I also "may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255.

Under Pennsylvania law, which applies here, the interpretation of an insurance policy generally involves a question of law. See S.J. Mot., Ex. B, Policy at 5 (Pennsylvania law applies to Policy); Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011); Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008). I must determine the parties' intent as manifested by the terms of the Policy. Murray, 658 F.3d at 320. I shall read the Policy as a whole and attempt to give effect to all of its provisions. Id. When the language is clear and unambiguous, I must give effect to the plain meaning of the terms. Id.; Gardner, 544 F.3d at 558. If the language is ambiguous, the parties' intent must be determined by the finder of fact and other evidence is admissible to determine that intent. See Windows v. Erie Ins. Co., 161 A.3d 953, 957-58 (Pa. Super. 2017). Language is ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Gardner, 544 F.3d at 558. Language is not ambiguous merely because the parties do not agree on the proper construction or if one of the interpretations is unreasonable. See Windows, 161 A.3d at 957.

**II.     Facts in Light Most Favorable to Plaintiffs**

On the morning of May 3, 2013, Desvarieux was sitting in the kitchen of her two-story Philadelphia row home ("Home") when she heard a cracking noise followed by a boom in the front room. See Resp. (doc. 20), Ex. A, 11/10/2017 Devarieux Dep. at 6, 16-17, 21, 25-26. She walked toward the noise, heard a second boom, and was covered with dust. See id. at 27. When Desvarieux opened her eyes, she saw her Home's front wall had collapsed. See id.

Desvarieux notified Allstate of the collapse and submitted a claim pursuant to the Policy. See id. at 27-28; S.J. Mot. at ¶ 17, Resp. at ¶ 17. Allstate hired a structural engineer, David Daniels, P.E., to determine the cause of the collapse. S.J. Mot. at ¶ 18, Resp. at ¶ 18. On May 24, 2016, Daniels issued a report, in which he concluded "with a reasonable degree of

2

engineering certainty that the stone front wall failure in the [Home] was sudden and accidental." Mot., Ex. C, 5/24/2016 Daniels Report at 5; see also S.J. Mot. at ¶ 22, Resp. at ¶ 22. He also found that "[t]he evidence indicates it was due to long term deterioration." 5/24/2016 Daniels Report at 5. Based on this determination and the Policy's provisions regarding collapses, Allstate denied coverage. See S.J. Mot., Ex. D, 6/1/2016 Allstate Letter; see also S.J. Mot. at ¶ 27, Resp. at ¶ 27.

Desvarieux subsequently hired her own engineer, Charles N. Timbie, P.E., who provided a report about the cause of the collapse in December 2016. See S.J. Mot., Ex. G, 12/2/2016 Timbie Report; S.J. Mot. at ¶ 53; Resp. at ¶ 53. Timbie found: "There was no triggering event causing the wall to collapse. The damage has been developing since the building was constructed. The front wall was improperly constructed in that the mortar did not have adequate strength and the wall was not properly toothed into the side walls and party wall or tied into the floor systems." 12/2/2016 Timbie Report at 2.

In June 2017, Timbie issued a second report after investigating a wet soil condition that was discovered during the reconstruction of the Home's front wall. See S.J. Mot, Ex. H, 6/21/2017 Timbie Report at 2. He explained: "[It] was discovered that the soil pipe from the toilet [in the basement bathroom] to the main in the basement floor had significantly ruptured allowing the waste and storm water to flow into the soil along the front wall. Cycles of saturation and draining of the soil caused building subsidence. Removal of the paneling in the basement revealed settlement of a front portion of the party wall at the toilet room." Id. Timbie continued to conclude that the collapse was the result of improper construction, but also found that "[t]he ruptured sewer pipe was a significant contributing factor in the settlement of the wall and the wall collapse." Id.

3

Allstate also arranged for Daniels to reinspect the Home to determine whether the broken sewer pipe had contributed to the collapse. See S.J. Mot. at ¶¶ 28-31, Resp. at ¶¶ 28-31. In July 2017, Daniels found that although photographs appeared to show a crack in a cast iron pipe found under the basement floor, the crack was small and would only allow a small amount of liquid to exit the pipe when the basement bathroom was used. See S.J. Mot., Ex. F, 7/6/2017 Daniels Report at 3; see also S.J. Mot. at ¶¶ 42-46, Resp. at ¶¶ 42-46. Daniels concluded that "the additional inspection of the property and the review of the numerous supplied photographs did not provide any evidence which would change [his] initial conclusion of the cause of the front wall collapse." See 7/6/21017 Daniels Report at 3. As a result, Allstate continued to deny coverage. See S.J. Mot. at ¶ 49, Resp. at ¶ 49.

Desvarieux sued Allstate for breach of contract and, during discovery, Allstate deposed Timbie. See S.J. Mot. at ¶¶ 50, 52, Resp. ¶¶ 50, 52. Timbie testified that he agreed with Daniels's findings that the collapse was the result of long-term deterioration. See S.J. Mot., Ex. I, 12/15/2017 Timbie Dep. at 29. However, he also said that the deteriorated condition of the Home was "aggravated by [the] broken pipe that was discovered during construction." Id. Timbie explained water had been released through the cracked pipe over a period of years and caused the front wall to settle. Id. at 36-38. When asked if it was fair to say that "the predominant cause of the [collapse was] long-term deterioration and defective, original construction methods," Timbie testified: "Yeah, I can't give you a percentage like 51 percent, 49 percent or anything like that, but I would say that the predominant cause was defective construction and deterioration of the wall." Id. at 40.

4

**III.    The Policy**

Section I of the Policy provides four types of property coverage: (1) Coverage A – Dwelling Protection, which generally includes coverage for the Home and attached structures; (2) Coverage B – Other Structures Protection, which generally includes coverage for separate structures identified in the Policy Declaration page; (3) Coverage C – Personal Property Protection, which generally includes personal property owned or used by the insured person; and (4) "Additional Protection," which sets forth 13 other specific types of losses or expenses covered by the Policy.  Policy at 1, 6-13.

The Additional Protection section states that the Policy covers collapses under specific conditions:

> 11. **Collapse**
>
>    **We** will cover at the **residence premises:**
>
>    a)   the entire collapse of a covered **building structure**;
>
>    b)   the entire collapse of part of a covered **building structure**; and
>
>    c)   direct physical loss to covered property caused by a) or b) above.
>
>    For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
>
>    a)   a loss **we** cover under **Section I, Coverage C – Personal Property Protection. . . .**[1]

---

[1]   This provision also allows for coverage where the physical loss was caused by:

  b) weight of persons, animals, equipment or contents;
  c) weight of rain, snow or ice which collects on a roof;
  d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Id. at 12-13, ¶ 11 ("Collapse Provision").

Section I, Coverage C – Personal Property Protection states:

> **We** will cover sudden and accidental direct physical loss to the property described in **Coverage C – Personal Property Protection**, except as limited or excluded in this policy, caused by:
> . . .
>
> 13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow. . . .[2]

Id. at 9, ¶ 13 ("Escape of Water Condition").

Section I of the Policy also contains a subsection titled, "**Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C.**" Id. at 13. The first part of that subsection states that the Policy does "not cover loss to the property described in **Coverage A – Dwelling Protection** or **Coverage B – Other Structures Protection** consisting of, or caused by" certain conditions, including:

> A.3. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel . . . from a plumbing . . . system. . . ..
>
> A.4. Collapse, except as specifically provided in **Section I – Additional Protection** under item 11, 'Collapse.'

Id. at 13-14, ¶ A.3 ("Seepage Exclusion"), ¶ A.4 ("Collapse Exclusion").

The subsection also contains a Predominant Cause Exclusion, stating: the Policy does "not cover loss to the property described in **Coverage A – Dwelling Protection or Coverage B – Other Structures Protection** when:"

---

Policy at 13. The parties, however, agree that none of these three provisions apply to this case. See Resp. Br. at 2.

[2] The parties agree this is the only relevant provision in Section I, Coverage C – Personal Property Protection. See S.J. Mot. at ¶ 100; Resp. Br. at 2.

>    1) there are two or more causes of loss to the covered property; and
>
>    2) the predominant cause(s) of loss is (are) excluded under [the Collapse or Seepage Exclusions].

Id. at 15, ¶ B.

The subsection includes a Surface Water Exclusion as well, stating: "**We** do not cover loss to the property described in **Coverage A – Dwelling Protection, Coverage B – Other Structures Protection** or **Coverage C – Personal Property Protection** consisting of or caused by":

>    3. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

Id. at ¶ C.3.

## IV. Discussion

Allstate argues that the Policy does not cover the Home's collapse because it was caused by deterioration, which is not one of the specific covered causes set forth in the Collapse Provision of the Additional Protection section. Allstate contends that the Escape of Water Condition also does not apply because the escape of water had to be sudden and the evidence showed that the escape of water from the cracked pipe in Desvarieux's basement was cyclical. Allstate also asserts that even if the Escape of Water Condition applied, coverage is still excluded based on the Seepage Exclusion, the Predominant Cause Exclusion, and the Surface Water Exclusion.

Desvarieux contends that the collapse should be covered by the Escape of Water Condition because Timbie found that the water from the cracked pipe contributed to the collapse and the Escape of Water Condition does not clearly and unambiguously require the escape of

7

water to be sudden. Desvarieux also argues that the Seepage, Predominant Cause, and Surface Water Exclusions do not preclude coverage because they apply only to Coverages A, B, and C, not the Additional Protection Section.

Although the Collapse Provision clearly and unambiguously requires a covered collapse to be sudden and accidental, it does not clearly and unambiguously require the causes for such a collapse to be sudden and accidental. See Policy at 13, ¶ 11 ("For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following"). Similarly, the Escape of Water Condition requires the physical loss, i.e., the collapse, to be sudden and accidental, but not the escape of water. See id. at 9 ("We will cover sudden and accidental direct physical loss to the property described in **Coverage C – Personal Property Protection**, except as limited or excluded in this policy, caused by" water that escapes from a plumbing system.). Based on this clear and unambiguous language, I conclude that the Policy provides coverage under the Additional Protection section for a sudden and accidental collapse caused by the non-sudden escape of water from a plumbing system.[3]

I also conclude that the Seepage, Predominant Cause, and Surface Water Exclusions do not apply to the Collapse Provision in the Additional Protection Section. The Policy clearly and unambiguously states that these exclusions apply to Coverage A, Coverage B, and Coverage C. See id. at 13-15. It does not state that these exclusions apply to the Additional Protection section, which is separate from and independent of those other sections of coverage. See id.;

---

[3] It is not clear from the Policy language whether the escape of water must be the sole or predominant cause for the collapse. At trial, the parties may present evidence "surrounding the execution of the document in an effort to clarify the meaning." Windows, 161 A.3d at 957 (citing Burns Mfg. v. Boehm, 356 A.2d 763, 767 n.3 (Pa. 1976)). If the ambiguity cannot be clarified, the ambiguous cause language must be construed in favor of Plaintiffs. Id.

8

Kowalyshyn v. Excelsior Ins. Co., No. 3:16-cv-00148, 2018 WL 888724, at *6 (D. Conn. Feb. 13, 2018) ("The clear reading of these sections is that the exclusions therein do not apply to limit coverage granted in the 'Additional Coverage' section.").

Allstate argues that the above exclusions apply to a collapse caused by the escape of water because the Escape of Water Condition includes an exception for other limitations and exclusions in the Policy. See Policy at 9 ("We will cover sudden and accidental direct physical loss to the property described in **Coverage C – Personal Property Protection**, except as limited or excluded in this policy, caused by" water that escapes from a plumbing system.). However, that exception clause applies solely to the types of Coverage C Property subject to the Escape of Water Condition, i.e., personal property set forth in Coverage C with the other limits and exclusions set forth in the Policy. See id.; see also id. at 7-9 (describing Personal Property covered under Coverage C with limitations and exceptions). Any other reading would be unreasonable because the Escape of Water Condition would be meaningless if the Seepage and Water Exclusions applied and nullified it.

Allstate also asserts it is unreasonable not to apply the Policy's exclusions to the Additional Protection section because it would mean that intentional acts otherwise excluded in the Policy would be covered in the Additional Protection section. See Reply Br. (doc. 22) at 6 ("If Plaintiffs' argument were correct, the intentional acts exclusion could not exclude coverage, even if Plaintiff intentionally precipitated the collapse."). The Collapse Provision and other similar provisions in the Additional Protection section, however, require the loss to be "sudden and accidental," thereby ensuring that intentional acts of loss will not be covered. See Policy at 12-13, ¶¶ 4, 11, 12.

Accordingly, because the Policy provides coverage for a collapse caused by the non-sudden escape of water from a plumbing system and because issues of material fact remain as to whether the escape of water from the cracked pipe caused the collapse, Allstate's motion for summary judgment is denied.

An appropriate order follows.